# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

RAMONT LOWELL RICHARDSON, JR.,    )
                                 )
                Plaintiff,      )
                                 )
                v.           )      1:20cv777
                                 )
WELLPATH HEALTH CARE, et al.,    )
                                 )
                Defendants.    )

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

This case comes before the undersigned United States Magistrate Judge for a recommendation on "Defendant Dr. Rhoades' Motion to Dismiss Plaintiff's Complaint" (Docket Entry 19 (the "Motion")). For the reasons that follow, the Court should deny the Motion.

## BACKGROUND

Pursuant to 42 U.S.C. § 1983 ("Section 1983"), Ramont Lowell Richardson, Jr. (the "Plaintiff"), a pretrial detainee acting pro se, commenced this action against Wellpath Health Care ("Wellpath"), HIG Capital Equity Firm ("HIG"), Bobby Kimbrough ("Kimbrough"), Dr. Alan Rhoades ("Rhoades"), Mrs. Williams ("Williams"), Forsyth County Sheriff's Department, Gloria Whisenhunt ("Whisenhunt"), and Dawn Quashie ("Quashie") (collectively, the "Defendants"), for acts and/or omissions amounting to deliberate indifference to Plaintiff's serious medical needs during his detention at Forsyth County Law Enforcement

Detention Center (the "Detention Center"). (See Docket Entry 2 (the "Complaint") at 1-38.)[1] Plaintiff attached to the Complaint copies of (i) several grievances expressing Plaintiff's medical concerns (Docket Entry 2-1) and (ii) forms acknowledging sick calls that Plaintiff submitted (Docket Entry 2-2). By subsequent correspondence, Plaintiff sought to add another deliberate-indifference claim based on events that occurred after he filed the Complaint (see Docket Entry 3 (the "Letter Motion")), which request the Court (per the undersigned) granted (see Docket Entry 4 at 6). According to the Complaint (as amended):

Plaintiff arrived at the Detention Center in April 2020. (See Docket Entry 2 at 16.) Prior to his detention, he sustained a gunshot wound to his head, and bullet fragments remained lodged in his body. (See id.) While at the Detention Center, that injury caused Plaintiff pain in his head, neck, and back, and he worried that the fragments could cause him further harm (to include "sudden death"). (See id.) Plaintiff also experienced lightheadedness, dizziness, and nervousness, the last of which he attributed to post-traumatic stress disorder. (See id. at 17.)

During Plaintiff's pretrial detention, Defendants allegedly rendered inadequate medical care and "unlawful professional judgments" (id. at 15). (See id. at 6-32.) As concerns each

---

[1] Citations herein to Docket Entry pages utilize the CM/ECF footer's pagination.

2

Defendant's alleged involvement in that conduct, Wellpath provides medical services on behalf of the Detention Center (see id. at 3, 6), and HIG, the parent company of Wellpath, "supervis[es] the contracts" (id. at 7) for the provision of such services. Kimbrough, as Forsyth County Sheriff (id. at 5), allegedly knew about the inadequate medical care Plaintiff received (see id. at 8), failed to follow statewide mandates for face coverings as a result of the COVID-19 pandemic (see id.), and refused to provide a face mask or COVID-19 test to Plaintiff (see id. at 21). He also allowed an inmate to move into Plaintiff's cell after testing positive for COVID-19. (See id. at 20-21.) Plaintiff has lodged similar claims against the Forsyth County Sheriff's Department, asserting that it failed to establish and enforce adequate policies for mitigating the risks of COVID-19 and for providing medical care to inmates. (See id. at 11, 26-28.) The Letter Motion supplements Plaintiff's allegations in that regard, relating Plaintiff's exposure to COVID-19 and subsequent quarantine during December 2020. (See Docket Entry 3 at 1.)

The Complaint further alleges that Rhoades, as a "[r]egional [d]octor" for Wellpath (Docket Entry 2 at 5), (i) delayed rendering care to Plaintiff (see id. at 9), (ii) denied Plaintiff access to prescriptions ordered by an outside provider (see id.), (iii) rejected Plaintiff's requests for treatment by a neurologist, physical therapy, and neck brace (see id. at 9, 22-23), and

(iv) caused Plaintiff to miss an appointment with an outside specialist (see id. at 23). Plaintiff's treatment by Williams and Quashie allegedly reflects many of the same general deficiencies (see id. at 10, 13), as well as denial of effective pain medication (see id.) and failure to order CT scans of Plaintiff's skull (see id. at 24, 31). Finally, according to Plaintiff, Whisenhunt did not use designated COVID-19 funds to advance the health and safety of inmates, despite possessing the authority to do so. (See id. at 12, 29-30.)

With respect to administrative remedies, Plaintiff has asserted that (i) his claims arose during confinement at the Detention Center (id. at 33), (ii) the Detention Center utilizes a grievance procedure that covers his claims (for "[i]nadequate medical care" and "COVID-19 exposure") (id.), (iii) he filed grievances at the Detention Center regarding those claims (id. at 34), and (iv) "[he] exhausted most of the grievance processes while others were violently disregarded and rejected" (id.).[2]

Pursuant to 28 U.S.C. § 1915A(a), the Court (per the undersigned) screened the Complaint to determine whether, inter alia, it "fails to state a claim upon which relief may be granted,"

---

2 Although the use of passive voice muddies the final allegation, Plaintiff appears to refer to disregard and rejection by prison staff, rather than his own response to the grievance procedure. (See id. at 5 (listing, without further development, first-amendment claim for "[r]ight to grievance"); see also Docket Entry 2-1 at 3-6 (copies of grievances from May 2020 marked as "non-grievable").)

4

28 U.S.C. § 1915A(b)(1). (See Docket Entry 4 (the "Recommendation") at 1.) In connection with that review, the undersigned noted that the allegations against Wellpath and HIG qualified as "conclusory and general" (id. at 3) and that their alleged liability depended on theories of respondeat superior liability, which do not exist under Section 1983 (see id. (citing Ashcroft v. Iqbal, 556 U.S. 662, 677 (2009))). Many allegations against Kimbrough suffered from similar deficiencies, and the Complaint lodged duplicative claims against Kimbrough in his official capacity and the Forsyth County Sheriff's Department, such that the latter need not remain in this case. (See id. at 3-4.) Finally, the undersigned deemed conclusory the allegations pertaining to Whisenhunt, Williams, and Quashie, explaining that Plaintiff had not plausibly alleged Whisenhunt's "control [over] the allocation of money" (id. at 4 (noting Whisenhunt's status as "single member of the Board of Commissioners")) and had attempted to inculpate Williams and Quashie "for the actions or decisions of others" (id. at 5).

However, the undersigned concluded that the Complaint adequately stated a claim against (i) Kimbrough for "den[ying] Plaintiff masks and testing for C[OVID]-19 for more than two and one[-]half months while eleven officers and an unknown number of inmates at the Detention Center tested positive for the virus" (id. at 3) and (ii) Rhoades for "fail[ing] to allow Plaintiff to see a

5

specialist for [fragments in Plaintiff's body following a gunshot wound to his head and partial immobility on his right side or] . . . to receive physical therapy to regain the use of his right side" (id. at 5). Accordingly, the undersigned recommended that the Court dismiss the claims against Wellpath, HIG, the Forsyth County Sheriff's Department, Whisenhunt, Williams, and Quashie but allow the claims against Kimbrough and Rhoades to proceed. (See id. at 6.) The undersigned also conditionally granted Plaintiff's request to proceed in forma pauperis. (See id.)

Shortly thereafter, Plaintiff supplemented the Complaint's allegations as to Quashie, explaining that she knowingly gave Plaintiff "mental health medicine" instead of effective pain medication. (See Docket Entry 6 (the "Supplement") at 1-2.) Plaintiff further groused about his lack of placement on a medical unit. (See id. at 1.) Upon review of the Supplement and Recommendation, the Court (per Chief United States District Judge Thomas D. Schroeder) first deemed conclusory many of the Supplement's allegations against Quashie (Docket Entry 10 at 1 n.1), observing that Plaintiff merely "disagree[d] with [her] judgment about proper pain management" (id.) and that Plaintiff failed to adequately allege Quashie's knowledge of Plaintiff's need for particular treatment and her inaction despite such knowledge (see id.). The Court then adopted the Recommendation (id. at 1),

6

allowing "Plaintiff's deliberate-indifference claims against Defendants Kimbrough and Rho[a]des . . . to proceed but" dismissing "the remainder of the claims in the [C]omplaint . . . pursuant to 28 U.S.C. § 1915A for failing to state a claim upon which relief may be granted." (Id. at 2.)

The undersigned directed the Clerk to "send Plaintiff a summons for each [D]efendant named in the [C]omplaint" (Docket Entry 7 at 1) and ordered Plaintiff to provide, on each summons, "an address suitable for service" (id.). Following the Clerk's and Plaintiff's compliance with those directives, the Clerk delivered summonses for Kimbrough and Rhoades, along with the Complaint and Supplement, to the United States Marshals Service ("USMS") for service. (See Docket Entry 8.) On April 14, 2021, USMS sent the documents to Rhoades by certified mail to an address in Nashville, Tennessee. (See Docket Entry 11 at 1.) The return receipt reflects delivery on April 19, 2021, to an address associated with Wellpath, and an indecipherable signature by a recipient identified as neither "agent" nor "addressee" (see id. at 2).

Rhoades simultaneously answered the Complaint (Docket Entry 18) and moved to dismiss on several grounds (Docket Entry 19). In support of dismissal, Rhoades has argued that Plaintiff's non-compliance with North Carolina Rule of Civil Procedure 9(j) ("Rule 9(j)") barred any medical-malpractice claim that he attempted to assert. (See Docket Entry 20 at 5–6.) Moreover, Rhoades has

7

contended that Plaintiff failed to (i) exhaust administrative remedies (see id. at 6–8), (ii) effect proper service of process on Rhoades (see id. at 8–10), and (iii) state a viable deliberate-indifference claim (see id. at 11–16). Together with the Motion and supporting memorandum, Rhoades filed an affidavit (the "Popp Affidavit") of Stephanie Popp, a Wellpath representative who averred as to the duration of Rhoades's association with Wellpath. (See id. at 20 (stating that Rhoades provided medical services at the Detention Center between 2010 and April 2018).)

The Clerk sent Plaintiff a letter advising him of his "right to file a 20-page response in opposition . . . within 21 days from the date of service of the [ M]otion[] upon [him]" (Docket Entry 21 at 1). The letter specifically cautioned Plaintiff that a "failure to respond . . . within the allowed time may cause the [C]ourt to conclude that [Rhoades]'s contentions are undisputed and/or that [Plaintiff] no longer wish[es] to pursue the matter," as well as that, "unless [Plaintiff] file[s] a response in opposition to the [ M]otion, it is likely [his] case will be dismissed . . . ."

(_Id._)  Despite these warnings, Plaintiff did not respond.  (_See_ Docket Entries dated May 26, 2021, to present.)[3]

**DISCUSSION**

## I.  Relevant Legal Standards

### A. Exhaustion

The Prison Litigation Reform Act of 1995, as amended (the "PLRA"), provides that "[n]o action shall be brought with respect to prison conditions under [S]ection 1983 . . . , or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  This "exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  _Porter_

---

    3  By local rule, "[i]f a respondent fails to file a response within the time required . . ., the motion will be considered and decided as an uncontested motion, and ordinarily will be granted without further notice."  M.D.N.C. LR 7.3(k).  "When a defendant's motion to dismiss a complaint states specific deficiencies that warrant dismissal, and presents supporting legal arguments, it is the plaintiff's obligation to respond substantively to address them.  Failure to respond to the defendant's arguments constitutes abandonment of those claims.  Any abandoned claims are subject to dismissal with prejudice."  _Kitchings v. Shelton_, Case No. 17-882, 2018 WL 398285, at *6 (D. Md. Jan. 12, 2018) (unpublished) (internal citations omitted).  However, the United States Court of Appeals for the Fourth Circuit requires substantive review of even unopposed motions to dismiss.  _See_ _Stevenson v. City of Seat Pleasant_, 743 F.3d 411, 416 n.3 (4th Cir. 2014) ("Even though [the plaintiffs] did not challenge the motions to dismiss, we note that the district court nevertheless has an obligation to review the motions to ensure that dismissal is proper.").

v. Nussle, 534 U.S. 516, 532 (2002). The defendant bears the burden of establishing that a prisoner failed to exhaust administrative remedies. See Jones v. Bock, 549 U.S. 199, 216 (2007) ("We conclude that failure to exhaust is an affirmative defense under the PLRA, and that inmates are not required to specially plead or demonstrate exhaustion in their complaints.").

"[A]n affirmative defense (such as failure to exhaust administrative remedies) may be decided on a motion to dismiss where the facts necessary to reach that decision appear on the complaint and the documents attached thereto." Murray v. Dobyns, No. 1:12CV214, 2013 WL 3326661, at *2 (M.D.N.C. July 1, 2013) (unpublished), recommendation adopted, slip op. (M.D.N.C. Jan. 14, 2014).[4] The "exhaustion of administrative remedies under the PLRA is a question of law to be determined by the judge . . . ." Drippe v. Tobelinski, 604 F.3d 778, 782 (3d Cir. 2010); see also Lee v. Willey, 789 F.3d 673, 677 (6th Cir. 2015) ("[A]ll . . . of the circuits that have considered the issue agree that judges may resolve factual disputes relevant to the exhaustion issue without the participation of a jury." (internal quotation marks omitted)). A prisoner satisfies the PLRA exhaustion requirement when he "ha[s]

---

4 As explained in more detail below, the Court at this stage may "take judicial notice of matters of public record," Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009), and "consider documents . . . attached to the motion to dismiss, so long as they are integral to the complaint and authentic," id. (internal citation omitted).

utilized all available remedies 'in accordance with the applicable procedural rules,' so that prison officials have been given an opportunity to address the claims administratively." <u>Moore v. Bennette</u>, 517 F.3d 717, 725 (4th Cir. 2008) (quoting <u>Woodford v. Ngo</u>, 548 U.S. 81, 88 (2006)). The relevant facility's grievance procedures determine the steps that a prisoner must take to achieve exhaustion. <u>See id.</u> at 726.

**B. Service of Process**

"Under Rule 12(b)(5) of the Federal Rules of Civil Procedure ['Rule 12(b)(5)'], a defendant can move to dismiss a complaint where service of process failed to comply with the requirements of Rule 4 of the Federal Rules of Civil Procedure ['Rule 4']." <u>Smith v. St. Francis Hosp.</u>, Civ. Action No. 6:12-2533, 2013 WL 3973170, at *2 (D.S.C. July 31, 2013) (unpublished). Rule 4 provides for service on an individual by

> (1) following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made; or
> (2) doing any of the following:
> > (A) delivering a copy of the summons and of the complaint to the individual personally;
> > (B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or
> > (C) delivering a copy of each to an agent authorized by appointment or by law to receive service of process.

Fed. R. Civ. P. 4(e). As relevant here, North Carolina law allows for service of process by various methods, to include by

"registered or certified mail, return receipt requested," N.C. Gen. Stat. § 1A-1, Rule 4(j)(1)(c).

Regarding compliance with such rules:

When the process gives the defendant actual notice of the pendency of the action, the rules, in general, are entitled to a liberal construction. When there is actual notice, every technical violation of the rule or failure of strict compliance may not invalidate the service of process. But the rules are there to be followed, and plain requirements for the means of effecting service of process may not be ignored.

Armco, Inc. v. Penrod-Stauffer Bldg. Sys., Inc., 733 F.2d 1087, 1089 (4th Cir. 1984). "Even so, courts generally allow pro se plaintiffs a chance to remedy technical insufficiencies in service of process." Thomas v. Nelms, No. 1:09CV491, 2013 WL 593419, at *1 (M.D.N.C. Feb. 14, 2013) (unpublished) (Eagles, J.); accord Miller v. Northwest Region Libr. Bd., 348 F. Supp. 2d 563, 567 (M.D.N.C. 2004) (Beaty, J.) ("[P]ro se litigants are allowed even greater latitude to correct defects in service of process and pleadings." (emphasis omitted)). "Dismissal of an action . . . under Rule 12(b)(5) for insufficiency of service is within the discretion of the court." Argot v. Harden, C/A No. 4:11-2755, 2012 WL 6839310, at *5 (D.S.C. Sept. 27, 2012) (unpublished), recommendation adopted, 2013 WL 132455 (D.S.C. Jan. 10, 2013) (unpublished).

## C. Failure to State a Claim

### 1. Rule 12(b)(6)

"A motion to dismiss under [Federal] Rule [of Civil Procedure] 12(b)(6) ['Rule 12(b)(6)'] tests the sufficiency of a complaint,"

12

but "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992). Accordingly, in reviewing a motion to dismiss, the Court must "accept the facts alleged in the complaint as true and construe them in the light most favorable to the plaintiff." Coleman v. Maryland Ct. of App., 626 F.3d 187, 189 (4th Cir. 2010), aff'd sub nom. Coleman v. Court of App. of Md., 566 U.S. 30 (2012). The Court must also "draw all reasonable inferences in favor of the plaintiff." E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 440 (4th Cir. 2011) (internal quotation marks omitted).

To avoid Rule 12(b)(6) dismissal, a complaint must contain sufficient factual allegations "to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). To qualify as plausible, a claim needs sufficient factual content to support a reasonable inference of the defendant's liability for the alleged misconduct. See id. (citing Twombly, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" Id. (quoting Twombly, 550 U.S. at 557). "At bottom, determining whether a complaint states . . . a plausible claim for relief . . . will 'be a context-specific task that requires the

13

reviewing court to draw on its judicial experience and common sense.'" Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009) (quoting Iqbal, 556 U.S. at 679).

In ruling on a Rule 12(b)(6) motion, "a court evaluates the complaint in its entirety, as well as documents attached or incorporated into the complaint." E.I. du Pont, 637 F.3d at 448. The Court may also "[c]onsider[] . . . a document attached to a motion to dismiss . . . only when the document is 'integral to and explicitly relied on in the complaint,' and when 'the plaintiffs do not challenge the document's authenticity.'" Zak v. Chelsea Therapeutics Int'l, Ltd., 780 F.3d 597, 606-07 (4th Cir. 2015) (internal brackets omitted) (quoting American Chiropractic Ass'n v. Trigon Healthcare, Inc., 367 F.3d 212, 234 (4th Cir. 2004)). Generally, a "court cannot go beyond these documents" without "convert[ing] the motion [to dismiss] into one for summary judgment." E.I. du Pont, 637 F.3d at 448. Nevertheless, "[i]n reviewing a Rule 12(b)(6) [motion, the Court] may properly take judicial notice of matters of public record." Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009).

### 2. Deliberate Indifference

"Under [Section] 1983, a state actor may be liable if he 'subjects, or causes to be subjected' an individual 'to the deprivation of any rights, privileges, or immunities secured by the Constitution.' As a general matter, a [state actor] may incur

14

[Section] 1983 liability only through affirmative misconduct."
Randall v. Prince George's Cnty., 302 F.3d 188, 202 (4th Cir. 2002)
(quoting Parratt v. Taylor, 451 U.S. 527, 535-36 (1981)).
"[Section] 1983 must be 'read against the background of tort
liability that makes a man responsible for the natural consequences
of his actions.'" Vinnedge v. Gibbs, 550 F.2d 926, 928 (4th Cir.
1977) (quoting Monroe v. Pape, 365 U.S. 167, 187 (1961)).
Accordingly, "it must be 'affirmatively shown that the official
charged acted personally in the deprivation of the plaintiff's
rights.'" Wright v. Collins, 766 F.2d 841, 850 (4th Cir. 1985)
(quoting Vinnedge, 550 F.2d at 928).

> Turning to the constitutional deprivation alleged here,
>
> when the State by the affirmative exercise of its power
> so restrains an individual's liberty that it renders him
> unable to care for himself, and at the same time fails to
> provide for his basic human needs — e.g., food, clothing,
> shelter, medical care, and reasonable safety — it
> transgresses the substantive limits on state action set
> by the Eighth Amendment and the Due Process Clause.

DeShaney v. Winnebago Cnty. Dep't of Soc. Servs., 489 U.S. 189, 200
(1989) (emphasis added). Courts evaluate pretrial detainees'
conditions of confinement in state custody under the Due Process
Clause of the Fourteenth Amendment. See Bell v. Wolfish, 441 U.S.
520, 535 (1979). "The due process rights of a pretrial detainee
are at least as great as the [E]ighth [A]mendment protections
available to the convicted prisoner." Martin v. Gentile, 849 F.2d
863, 870 (4th Cir. 1988). "Thus, deliberate indifference to the

serious medical needs of a pretrial detainee violates the [D]ue [P]rocess [C]lause." <u>Young v. City of Mount Ranier</u>, 238 F.3d 567, 575 (4th Cir. 2001).

In other words, "even though [a pretrial detainee's deliberate-indifference] claim arises under the Fourteenth Amendment, [courts] have traditionally looked to Eighth Amendment precedents in considering a Fourteenth Amendment claim of deliberate indifference to serious medical needs." <u>Mays v. Sprinkle</u>, 992 F.3d 295, 300 (4th Cir. 2021). The Eighth Amendment requires that prison officials "provide humane conditions of confinement," which includes, among other things, "ensur[ing] that inmates receive adequate . . . medical care," <u>Farmer v. Brennan</u>, 511 U.S. 825, 832–33 (1994).

To make out a constitutional claim for deprivation of medical care, a plaintiff must show that a defendant "acted with 'deliberate indifference' (subjective) to [the plaintiff's] 'serious medical needs' (objective)." <u>Iko v. Shreve</u>, 535 F.3d 225, 241 (4th Cir. 2008). A medical need qualifies as serious if it "has been diagnosed by a physician as mandating treatment or . . . is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." <u>Id.</u> (internal quotation marks omitted). A defendant displays deliberate indifference when he possesses knowledge of the risk of harm to an inmate and knows that "his actions were insufficient to mitigate

16

the risk of harm to the inmate arising from his medical needs."
Id. (emphasis and internal quotation marks omitted); see also
Scinto v. Stansberry, 841 F.3d 219, 225 (4th Cir. 2016) ("To prove
deliberate indifference, plaintiffs must show that 'the official
kn[ew] of and disregard[ed] an excessive risk to inmate health or
safety.'" (brackets in original) (quoting Farmer, 511 U.S. at
837)).

    "The subjective component . . . sets a particularly high bar
to recovery." Iko, 535 F.3d at 241. In particular, "deliberate
indifference     entails     something     more     than     mere
negligence, . . . [but] something less than acts or omissions for
the very purpose of causing harm or with knowledge that harm will
result." Farmer, 511 U.S. at 835. "It requires that a [defendant]
actually know of and disregard an objectively serious condition,
medical need, or risk of harm." De'lonta v. Johnson, 708 F.3d 520,
525 (4th Cir. 2013) (internal quotation marks omitted). "Failure
to respond to an inmate's known medical needs raises an inference
[of] deliberate indifference to those needs." Scinto, 841 F.3d at
232 (brackets in original) (quoting Miltier v. Beorn, 896 F.2d 848,
853 (4th Cir. 1990), overruled in part on other grounds by Farmer,
511 U.S. at 837). However, neither "[n]egligence [n]or malpractice
in the provision of medical services . . . constitute[s] a claim
under [Section] 1983." Wright, 766 F.2d at 849; see also Harris v.
Poole, No. 1:18CV378, 2020 WL 531954, at *14 (M.D.N.C. Feb. 3,

17

2020) (unpublished) ("[D]isagreements between an inmate and medical provider regarding the inmate's medical care, without more, do not create a constitutional claim, and inmates possess no constitutional right to treatment by a particular type of medical provider."), recommendation adopted, slip op. (M.D.N.C. Mar. 30, 2020).

Finally, "a significant delay in the treatment of a serious medical condition may, in the proper circumstances," constitute deliberate indifference. Webb v. Hamidullah, 281 F. App'x 159, 166 (4th Cir. 2008). "A[ constitutional] violation only occurs, however, if the delay results in some substantial harm to the patient." Id. at 166-67 (internal footnote omitted); accord Sharpe v. South Carolina Dep't of Corr., 621 F. App'x 732, 734 (4th Cir. 2015) ("A delay in treatment may constitute deliberate indifference if the delay exacerbated the injury or unnecessarily prolonged an inmate's pain.").

### 3. Negligence

North Carolina law recognizes a claim for medical malpractice, or "[a] civil action for damages for personal injury or death arising out of the furnishing or failure to furnish professional services in the performance of medical, dental, or other health care by a health care provider." N.C. Gen. Stat. § 90-21.11(2)(a).[5] Furthermore,

---

5 A "health care provider" means "[a] person who pursuant to the provisions of Chapter 90 of the General Statutes is licensed,

18

> North Carolina imposes substantive legal requirements
> that a person must follow to pursue a medical[-
> ]malpractice claim. Under [Rule] 9(j), a plaintiff's
> medical[-]malpractice complaint must assert that the
> medical care has been reviewed by a person who is
> reasonably expected to qualify (or whom the plaintiff
> will move to qualify) as an expert witness and who is
> willing to testify that the medical care received by the
> plaintiff did not comply with the applicable standard of
> care.

Deal v. Central Prison Hosp., No. 5:09CT3182, 2011 WL 322403, at *4
(E.D.N.C. Jan. 27, 2011) (unpublished) (internal citation omitted).

Although federal courts previously enforced Rule 9(j) and
dismissed noncompliant medical-malpractice claims, see id., the
United States Court of Appeals for the Fourth Circuit recently
concluded that an analogous state-law requirement did not apply in
federal court, see Pledger v. Lynch, 5 F.4th 511, 517-24 (4th Cir.
2021) (concluding that Federal Rules of Civil Procedure displace
West Virginia's certification requirement and deeming the latter
inapplicable to claim under Federal Tort Claims Act ("FTCA")).
Following that reasoning, a neighboring court recently rejected
Rule 9(j) noncompliance as a basis for dismissing an FTCA claim.
Saylon v. United States, No. 5:20CV176, 2021 WL 3160425, at *3-4
(E.D.N.C. July 26, 2021) (unpublished).

---

or is otherwise registered or certified to engage in the practice
of or otherwise performs duties associated with any of the
following: medicine, surgery, dentistry, pharmacy, optometry,
midwifery, osteopathy, podiatry, chiropractic, radiology, nursing,
physiotherapy, pathology, anesthesiology, anesthesia, laboratory
analysis, rendering assistance to a physician, dental hygiene,
psychiatry, or psychology." N.C. Gen. Stat. § 90-21.11(1)(a).

## II. Analysis

### A. Exhaustion

Rhoades has asserted that Plaintiff failed to exhaust administrative remedies, warranting dismissal. (See Docket Entry 20 at 6-8.) In that regard, after describing the three-step administrative remedy procedure ("ARP") employed by the Division of Adult Correction within the North Carolina Department of Public Safety, Rhoades has emphasized the allegation in the Complaint suggesting that Plaintiff did not complete all parts of the grievance process. (See id. at 7-8 (quoting Docket Entry 2 at 34).)[6] Additionally, Rhoades has contended that "Plaintiff did not attach evidence of an exhausted appeal process." (Id. at 8.)

However, as a pretrial detainee, Plaintiff's claims arose at the Detention Center (a local jail), not at a state prison facility operated by the North Carolina Department of Public Safety, such that the ARP utilized by the latter bears no obvious significance here. See generally N.C. Gen. Stat. §§ 148-118.1 - 148-118.8 (providing for creation of ARP applicable to "all prisoners in the physical custody of the Division of Adult Correction" (emphasis added)). Rhoades has offered no information about the Detention Center's grievance process, and independent research (for purposes

---

6    An electronic version of the ARP upon which Rhoades evidently has relied appears at this address: https://files.nc.gov/ncdps/div/Prisons/Policy_Procedure_Manual/G.0300_08_01_13.pdf

of taking judicial notice) yielded no results. Identification of the Detention Center's grievance process must precede a determination of whether Plaintiff complied with the same. See Moore, 517 F.3d at 726.

In any event, as Rhoades correctly has noted elsewhere, "[a]n inmate does not need to demonstrate exhaustion of administrative remedies in his complaint." (Docket Entry 20 at 6 (citing Custis v. Davis, 851 F.3d 358, 361 (4th Cir. 2017)).) Exhaustion provides an appropriate basis for dismissal only when "all facts necessary to the affirmative defense 'clearly appear[] on the face of the complaint.'" Goodman v. PraxAir, Inc., 494 F.3d 458, 464 (4th Cir. 2007) (italics omitted) (quoting Richmond, Fredericksburg & Potomac R.R. v. Forst, 4 F.3d 244, 250 (4th Cir. 1993)). Here, the Complaint and exhibits attached thereto establish neither exhaustion of administrative remedies nor Plaintiff's failure to accomplish the same. (See Docket Entry 2 at 34 (alleging completion of "most . . . grievance processes" (emphasis added)).) In other words, the Complaint remains equivocal, insofar as it could suggest either that Plaintiff fully exhausted only some grievances or that he failed to fully exhaust any grievance. Importantly, because Defendants bear the burden of proving this affirmative defense, Plaintiff need not have "specially plead[ed] or demonstrate[d] exhaustion," Jones, 549 U.S. at 216. For the

21

foregoing reasons, the Court should decline to dismiss on exhaustion grounds.

## B. Service of Process

Rhoades also contests the sufficiency of service of process and seeks dismissal under Rule 12(b)(2) and Rule 12(b)(5). (See Docket Entry 20 at 8-10 (arguing that improper service of process deprives Court of personal jurisdiction).) More specifically, Rhoades has asserted that Plaintiff mailed the summons and Complaint to "Wellpath's principal place of business[,] not [] Rhoades['s] home address" (id. at 10) and that "no person at Wellpath was authorized to accept service on behalf of [] Rhoades because he was no longer employed at th[at] location" (id.). (See also id. at 9-10 (citing Stewart v. GM Fin., No. 3:19CV411, 2019 WL 5850425, at *2 (W.D.N.C. Nov. 7, 2019) (unpublished), and Stanley v. Gaston Cnty. Dep't of Health & Human Servs., No 3:15CV551, 2016 WL 5867431, at *1-2 (W.D.N.C. Oct. 6, 2016) (unpublished)).)

Insofar as Rhoades has suggested that a certified mailing to an individual's place of employment fails to constitute proper service of process, "[a] plaintiff is not required to mail the summons and complaint to a defendant's residence; sending the suit papers to a defendant's place of employment is within the rule," Moore v. Cox, 341 F. Supp. 2d 570, 573 (M.D.N.C. 2004).[7] In

_____

7 Neither Stewart nor Stanley explicitly discussed whether the plaintiffs had served the defendants by certified mail. See Stewart, 2019 WL 5850425, at *7; Stanley, 2016 WL 5867431, at *2.

22

connection with that method, North Carolina law contemplates "deliver[y] to the addressee," N.C. Gen. Stat. § 1A-1, Rule 4(j)(1)(c), and provides a procedure by which a defendant can challenge service of process when someone other than the addressee signs the delivery receipt, see N.C. Gen. Stat. § 1A-1, Rule 4(j2)(2). Under normal circumstances, a plaintiff may file an affidavit regarding the details of such certified mailing and thereby "raise[] a presumption that the person who received the mail or delivery and signed the receipt was an agent of the addressee authorized by appointment or by law to be served or to accept service of process," id.

Here, Plaintiff has filed no such affidavit. (See Docket Entries dated Apr. 26, 2021, to present.) That failure does not entitle Rhoades to dismissal, however, particularly given Plaintiff's status as a pauper and the Court's corresponding responsibility to effect service of process, see 28 U.S.C. § 1915(d), as well as Rhoades's actual notice of this action, see Karlsson v. Rabinowitz, 318 F.2d 666, 668 (4th Cir. 1963) ("[W]here actual notice of the commencement of the action and the duty to defend has been received by the one served, the provisions of Rule 4 . . . should be liberally construed to effectuate service and uphold the jurisdiction of the court, thus insuring the opportunity for a trial on the merits."). See also Reinhold v. Tisdale, Civ. Action No. 8:06-3311, 2007 WL 2156661, at *3 (D.S.C. Apr. 30, 2007)

(unpublished) ("Ordinarily, dismissal is proper when there is prejudice to the defendant or where proper service is unlikely to be accomplished."), recommendation adopted, 2007 WL 2173368 (D.S.C. July 26, 2007) (unpublished). For those reasons, the Court should decline to dismiss based on Rule 12(b)(5), opting instead to "quash [any] insufficient service and allow [P]laintiff to perfect service through the [USMS]." Argot, 2012 WL 6839310, at *5.[8]

---

8  To the extent Rhoades has invoked Rule 12(b)(2) and argued for dismissal based on lack of personal jurisdiction,

> a respected treatise instructs that:

> Although the questions of personal jurisdiction and service of process are closely interrelated, service of process is merely the means by which a federal court gives notice to the defendant and asserts jurisdiction over him; the actual existence of personal jurisdiction should be challenged by a Rule 12(b)(2) motion. A few courts have noted this distinction between the motions, but the cases indicate that it generally is quite acceptable to question the court's jurisdiction by a motion objecting to service of process. The occasional judicial failure to distinguish sharply between the two has not caused any difficulty, however, because the courts have been able to determine the merits of the real issue before them regardless of how the motion is designated and nothing appears to turn on the misdesignation.

Garcia v. McClaskey, No. 1:12CV93, 2015 WL 5007885, at *2 n.3 (M.D.N.C. Aug. 20, 2015) (unpublished) (quoting Wright & Miller, et al., 5B Federal Practice & Procedure § 1353 (3d ed. 1998)), aff'd, 693 F. App'x 236 (4th Cir. 2017). Because Rhoades's sole challenge to personal jurisdiction targets service of process (see Docket Entry 20 at 8-10), Rule 12(b)(5) best applies, see Plant Genetic Sys., N.V. v. Ciba Seeds, 933 F. Supp. 519, 526 (M.D.N.C. 1996) (Osteen, Sr., J.) ("A motion to dismiss under Rule 12(b)(5) is the appropriate means for challenging the manner or sufficiency of service of process.").

## C. Failure to State a Claim

### 1. Deliberate Indifference

Pursuant to Rule 12(b)(6), Rhoades has lodged two challenges to the Complaint. First, he has asserted that "[he] was not an employee or contractor of Wellpath at the time of Plaintiff's complaints against him." (Docket Entry 20 at 11 (citing Popp Affidavit, ¶¶ 4-5).) Second, Rhoades has contended that the Complaint fails to adequately allege either element of a deliberate-indifference claim. (See id. at 12-16.)

Regarding the first argument, Plaintiff has relied on materials outside the Complaint (and attached exhibits) in urging dismissal based on his supposed lack of involvement in Plaintiff's medical care during 2020. (See id. at 11 (citing Popp Affidavit, ¶¶ 4-5).) Although the Court may consider "documents attached to the [M]otion . . . , so long as they are integral to the [C]omplaint and authentic," Philips, 572 F.3d at 180, Plaintiff has not relied on the Popp Affidavit in any way, and Rhoades has not explained how that document qualifies as "integral to the [C]omplaint," id. (See Docket Entry 20 at 11.) Therefore, the Court should decline to dismiss this action based on the Popp Affidavit.

Turning to Rhoades's remaining argument, the Court should conclude that the Complaint adequately alleges both the subjective and objective elements of a deliberate-indifference claim.

25

Regarding the former, numerous courts have deemed a gunshot wound — even an older or partially healed one — a sufficiently serious medical need for purposes of an eighth-amendment claim. See, e.g., Miles v. Booth, 238 F.3d 422 (table), 2000 WL 1800565, at *3 (6th Cir. Nov. 30, 2000) (unpublished); Sago v. Lashbrook, No. 18CV160, 2018 WL 1640483, at *4 (S.D. Ill. Apr. 5, 2018) (unpublished) (collecting cases). Plaintiff also has alleged that such injury caused a partial inability to use the right side of his body, which could constitute an objectively serious medical need. See Drouin v. Contra Costa Cnty., No. 15CV3694, 2017 WL 1208371, at *5 (N.D. Cal. Apr. 3, 2017) (unpublished) (deeming allegations of "readily apparent" partial paralysis after broken leg sufficient to state eighth-amendment claim).

As concerns the subjective prong, in light of the Court's obligation to "accept the facts alleged in the [C]omplaint as true and construe them in the light most favorable to [P]laintiff," Coleman, 626 F.3d at 189, the Court should determine that the Complaint passes muster. In particular, Plaintiff has alleged that Rhoades knew about (i) the gunshot wound to Plaintiff's head, (ii) the fragments that remained in Plaintiff's body, and (iii) the resulting "severe chronic pain" that Plaintiff experienced. (See Docket Entry 2 at 22.) Despite that knowledge, Rhoades refused to refer Plaintiff to a specialist (see id. at 9, 22), "delay[ed] seeing [him]" (id. at 9), and "avoided seeing [him] face to face"

(id. at 22).  Additionally, Rhoades denied Plaintiff's request for
physical therapy, despite the fact that Plaintiff, after the
gunshot wound, lacked "full usage of [his] right side" (id.).  At
this stage, those allegations demonstrate a risk to Plaintiff's
health "sufficiently obvious that [Rhoades] 'must have known' of
it," Jackson v. Lightsey, 775 F.3d 170, 179 (4th Cir. 2014)
(quoting Farmer, 511 U.S. at 842), and a failure to respond
reasonably to such risk, see generally Mitchell v. McDonell, Case
No. 3:06-180, 2008 WL 5429704, at *1 (W.D. Pa. Dec. 8, 2008)
(unpublished) ("[I]t is sufficient for a plaintiff to allege
circumstantial evidence that allows the conclusion that the
necessary course of action was so obvious and the actual course of
action taken by the defendant was so unresponsive that the
defendant must have been aware of and disregarded it."),
recommendation adopted in part, 2008 WL 5429701 (W.D. Pa. Dec. 30,
2008) (unpublished).

2. Negligence

To the extent the Complaint contains a negligence claim,
Rhoades has sought dismissal based on Plaintiff's non-compliance
with Rule 9(j).  (See Docket Entry 20 at 5-6.)  In support of that
position, Rhoades has suggested that "district courts in this
circuit are . . . unanimous that a Rule 9(j) certification is
required to sustain a medical[-]malpractice action . . . in North
Carolina." (Id. at 6 (quoting Littlepaige v. United States, 528 F.

27

App'x 289, 292 (4th Cir. 2013) (unpublished)).)  However, recent Fourth Circuit authority has rendered Rule 9(j) a nullity in federal court.  See <u>Pledger</u>, 5 F.4th at 517-24.  Accordingly, the Court should decline to conclude that Rule 9(j) bars any portion of the Complaint.

<u>**CONCLUSION**</u>

Any failure by Plaintiff to exhaust administrative remedies does not appear on the face of the Complaint, so Rhoades lacks entitlement to dismissal on exhaustion grounds.  Additionally, Plaintiff may cure the supposedly improper service of process as an alternative to dismissal.  To the extent Rhoades has denied involvement in Plaintiff's care, the Court should decline to decide factual questions as this stage.  Finally, the Court should conclude that the Complaint adequately states a deliberate-indifference claim against Rhoades.

**IT IS THEREFORE RECOMMENDED** that the Motion (Docket Entry 19) be **DENIED**.

/s/ L. Patrick Auld

**L. Patrick Auld**
**United States Magistrate Judge**

November 10, 2021

28